# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

_____PINE BLUFF_____ **DIVISION**    FEB 1 4 2014

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

JEREMY KENNEDY _____

_____

_____

(Enter above the full name of the plaintiff(s)
in this action.)

V.                    CASE NO. 5:14-CV-053 KGB - BD

BARBARA COLLINS; CORRECTIONAL OFFICER; CO-I B. NELSON; ROBERT JONES; DR. IKO; WENDY KELLEY;
AMY WEST; INTAKE NURSE; JOHN DOE-GRIMES; JOHN DOE-CALICO ROCK; DR. OLSEN; DR. SHOCK;
JOHN DOE-WRIGHTSVILLE DENTIST); JOHN DOE-WRIGHTSVILLE; DR. MC KINNEY; DR. MICHELLE BISHOP;
(Enter above the full name of the defendant(s) HEALTH SERVICES ADMINISTRATOR; DEBORAH YORK
in this action.)

I.    Previous Lawsuits
   a)  Have you begun other lawsuits in state or federal court dealing with the same facts involved
       in this action?

       Yes __X_____    No _____

   b)  If your answer to "a" is "Yes", describe each lawsuit in the space below <u>including the exact
       plaintiff name or alias used</u>.   (If there is more than one lawsuit, describe the additional
       lawsuits on another piece of paper, using the same outline.) This case assigned to District Judge
                                                                      and to Magistrate Judge

       1.  Parties to this lawsuit

           Plaintiffs: JEREMY KENNEDY _____

           _____

           Defendants: DR. ROBERT JONES etal _____

           _____

       2.  Court (if federal court, name the district; if state, name the county): _____

           PULASKI COUNTY CIRCUIT COURT _____

       3.  Docket Number: 60CV-13-4724 _____

4) Name of judge to whom case was assigned: _Fox_____

5) Disposition (for example:   Was the case dismissed?   Was it appealed?   Is it still pending?): ~~dismissed~~ STILL PENDING  Motion to Revoke IFP status pending

6) Approximate date of filing lawsuit: _Dec. 2013_____

7) Approximate date of disposition: _N/A_____

II.   Place of Present Confinement: _A.O.C.  VARNER Unit_____

_____

III.   There is a prisoner grievance procedure in the Arkansas Department of Corrections. **Failure to complete the grievance procedure may affect your case in federal court.**

a)   Did you present the facts relating to your complaint in the state prisoner grievance procedure?

Yes ____X_____          No _____

b)   If your answer is "yes", <u>attached copies</u> evidencing completion of the final step of the →SEE ATTACHED grievance appeal procedure.   **FAILURE TO ATTACH THE REQUIRED COPIES MAY RESULT IN THE DISMISSAL OF YOUR COMPLAINT.**

c)   If your answer is "no", explain why not: _____

_____

_____

IV.   Parties

(In item "a" below, place your name in the first blank and place your present address in the second blank.

a)   Name of Plaintiff: _JEREMY KENNEDY_____

Address: _P.O. BOX 600_____

_____ _GRADY AR 71644_____

Name of Plaintiff: _____

Address: _____

_____

(In item "b" below, place the **full** name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.)

b)   Defendant: Dr. Robert Jones ; LPN Amy West ; LPN INTAKE NURSE

Position: MEDICAL STAFF

Place of Employment: OUCHITA RIVER UNIT    Address UNKNOWN

Address: Dr. McKINNEY ; John Doe - wrightsville ; John Doe wrightsville (Dentist)

Defendant: ~~Medical Staff~~

Position: Medical staff

Place of Employment: Wrightsville Unit

Address: P.O. Box 1000  Wrightsville Ar

Defendant: Barbara Collins Deputy Director Wendy Kelley ; B Nelson ; Correctional officer

Position: Collins - medical staff - The rest A.D.C. staff

Place of Employment: Pine Bluff Prison Complex

Address: P.O. Box 8707 Pine Bluff Ar

Defendant: Dr. iko , Dr Olsen ; Deborah York Dr Shock

Position: medical staff

Place of Employment: Varner Unit

Address: P.O. Box 600 Grady Ar
Health services Administrator
D.C.U. Pine Bluff) medical Supervisor in late 2011
Address UNKNOWN

John Doe - Calico Rock ; Dr. Michelle Bishop
medical staff North Central Unit
Calico Rock Ar

V.   Statement of Claim

State here as briefly as possible the facts of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  Do not give any legal arguments or cite any cases or statutes.  It you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

_SEE ATTACHED_

VI.   Relief

**State briefly exactly what you want the court to do for you.**  Make no legal arguments.  Cite no cases or statutes.

_SEE ATTACHED_

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.

Executed this _31_ day of _JANUARY_, 20 _14_.

Respectfully submitted,

PLAINTIFF, Pro Se
ADC #
Varner Unit
Arkansas Department of Correction
Grady, AR 71644

WITH THE RESPECTS TO THE CLAIMS CONCERNING THE BROKEN NOSE AND DENTAL ISSUE. I HAVE EXHAUSTED THE GRIEVANCE PROCESS IN 2012 I DO NOT HAVE COPIES OF THESE GRIEVANCES. A.D. 12-16 ALLOWS ME TO REQUEST A COPY ONE TIME FOR LEGAL PURPOSES. IVE DONE SO. THE VARNER UNIT GRIEVANCE OFFICER CLAIMS I HAVE TO SEND A COPY OF MY LAWSUIT TO THE UNIT WHERE I WROTE THE GRIEVANCE. I WROTE THEM AT THE PINE BLUFF DIAGNOSTICS WHICH IS SHUT DOWN.

ADDITIONALLY MY LEGAL WORK IS CONFIDENTIAL. THE DEFENDANTS WILL RECEIVE A COPY OF MY LAWSUIT WHEN IT IS SERVED ON THEM

LATE LAST YEAR I FILED A GRIEVANCE ON THE INADEQUATE TREATMENT CONCERNING ALL 4 CLAIMS. I RECEIVED A RESPONSE FROM STEP 1 AND APPEALED IT TO WENDY KELLEY. STEP 2 (THE FINAL STEP)

I SUBMITTED THIS LAST STEP GRIEVANCE APPEAL BACK IN DECEMBER KELLEY HAD 30 DAYS TO REPLY. SHE DID NOT. I ASKED THE GRIEVANCE OFFICER ABOUT IT. SHE SAID SHE FORWARDED MY REQUEST TO THE INFIRMARY THEY HAVE NO ANSWERED

I WENT THRU ALL THE STEPS IN THE GRIEVANCE PROCESS. I CANNOT MAKE ADC STAFF GIVE ME THE COPIES. MY ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED. I WILL DEMAND COPIES OF THE GRIEVANCES THRU DISCOVERY

SEVERAL COURTS HOLDS IF A PRISONER files suit after the time limit for decision has passed and then grievance authorities issue a late deasion the prisoner has exhausted Powe v. Ennis 177 F.3d 393 394 (5th Cir. 1999) Olmstead v. Cooney 2005 WL 233817, *2 (D.Or. Jan 31 2005)

# ARKANSAS DEPARTMENT OF CORRECTION
## VARNER UNIT
### INTER-OFFICE COMMUNICATION

TO:        Inmate Kennedy, Jeremy  ADC #093061  BKS 19-03

FROM:    Sharon L. Cantrell, Program Specialist-Grievance

RE:        Request for Interview - Section 1983 Lawsuit

DATE:    October 30, 2013

In order to receive copies of your grievances, you will need to forward a completed Section 1983 lawsuit or Claims Commission claim form to the Unit that processed the grievance. If you need blank forms you can request one from the Law Library with instructions. Since you are requesting copies from another Unit these forms would have to be forwarded to that Unit as Varner/VSM does not have access to copies of grievances at other Units.

Refer to the below listed information regarding receiving copies of grievances.

### PER AD: 12-16 Inmate Grievance Procedure:
**Accessibility (Page 4 of 29)**
Inmates may request one copy of their grievance from the facility grievance staff upon **presenting a completed Section 1983 lawsuit or Claims Commission claim.** The inmate also **needs to give the grievance number for the particular grievance he/she is requesting.**

**Prison Litigation Reform Act Notice (Page 18 of 29)**
Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim.  If this is not done, their lawsuits or claims may be dismissed immediate

Inmates must attach a copy of the Chief Deputy/Deputy/Assistant Director's response to any petition or complaint; otherwise the court or commission may dismiss the case without notice.

Inmates are also advised that they shall be subject to paying filing fees in Federal Court pursuant to the Prison Litigation Reform Act of 1996.

Additionally, you should have either the pink or yellow copy of your grievances that you can use.

Cc: File

# ARKANSAS DEPARTMENT OF CORRECTION
## VARNER UNIT
### INTER-OFFICE COMMUNICATION

**TO:**       IM Kennedy, Jeremy ADC #093061 BKS 19-28

**FROM:**     Sharon L. Cantrell, Program Specialist - Grievance

**RE:**       Request for Interview – Medical Grievance

**DATE:**     January 29, 2014

Your Request for Interview concerning a Medical issue/appeal has been forwarded to the Infirmary. The Grievance Office only enters and acknowledges the medical grievances.



Cc: File

COMPLAINT WITH A JURY DEMAND

Introduction

This is a civil rights action filed by Jeremy Kennedy, a state prisoner, for damages and injunctive relief under 42 U.S.C § 1983, alleging a failure to protect and a denial of medical care in violation of the 8th Amend. to the U.S. Constitution. The Plaintiff also alleges the torts of personal injury, negligence, medical negligence and malpractice

Jurisdiction

1. The Court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C §§ 1331(1) and 1343

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C § 1367

Parties

3. The Plaintiff Jeremy Kennedy was incarcerated in the Arkansas Department of Corrections during the events described in this complaint

4. (Pine Bluff) Defendant Barbara Collins was a CORIZON Nurse in the Randall L. Williams Unit Infirmary. Defendant Correctional Officer is an A.D.C. Prison Guard whos name is presently unknown. He works or worked at the Randall L. Williams Unit. Both defendants are sued in their individual capacities. Defendant Nelson is/was also a Coffe Prison guard at the Randall L Williams Unit and is sued in his individual capacity

5. (Ouchita River) Defendant Robert Jones is a dentist at the Ouchita River Unit ("D.R.U") Defendants Amy West and Intake Nurse are medical staff in the O.R.U. medical dept. Defendant Intake Nurse's is presently unknown. These defendants are sued in their individual capacities

1.

6.     Defendant John Doe-Grimes is a dentist at the Grimes Unit. Defendant John Doe-Calico Rock is a dentist at the North Central Unit. Defendant John Doe-Wrightsville (dentist) is a dentist at the Wrightsville Unit. The names of these defendants are presently unknown. They are being sued in their individual capacities.

7.     Defendants Dr. McKinney and John Doe-Wrightsville are or were doctors at the Wrightsville Unit. Plaintiff thinks Doe-Wrightsville's name may be Dr. Anderson. Defendant Michelle Bishop is a doctor at the North Central Unit. Defendants Dr. Olsen and Dr. Iko are doctors at the Varner Unit. Defendant Dr. Shock, Corizon orthopedic who travels from prison to prison. These defendants are sued in their individual capacities.

8.     Defendant Health Services Administrator was a medical supervisor at the P.B. Pine Bluff Diagnostics Unit. Defendant Deborah York is a supervisor over the Varner Unit infirmary. They are sued in their individual capacities.

9.     Defendant Wendy Kelley is an A.D.C. Deputy Director over inmate medical services. She is sued in her individual capacity.

10.     All the defendants have acted and continue to act under color of state law at all times relevant to this complaint.

11. ~~Additional defendant Brad Nelson is was A.D.C. correctional officer employed at the Williams Unit in Sept. 2013. He is sued in his individual capacity~~

## HEPATITIS

11. In 2007, PRISON medical staff told Kennedy that he had chronic Hepatitis C ("HepC"). When inmates have HepC, they are placed on the "HepC Chronic Care" list. Every 3 months, their blood is drawn and analyzed by a lab which determines liver enzyme levels. Elevated enzyme levels are indicative of the disease's PROGRESSION as well as liver damage (i.e, cirrhosis or liver cancer)

12. The Corizon HepC treatment policy is that an inmate must have liver ENZYMES elevated 3 times Normal limits for 3 consecutive Chronic Care visits (9 months) to qualify as needing treatment.

13. From December 2009 up to NOW, Kennedys liver enzymes have been high. Around May 2012, his liver enzymes had been 3 times normal levels for 3 Chronic Care visits.

14. Defendant Dr. McKinney said he would start Kennedy on the treatment. A week or so later, McKinney called Kennedy back to his office and said Kennedy did not have HepC but that he did have HepB. McKinney stated that no treatment existed for HepB.

15. McKinney stated he would call Kennedy back later. Kennedy did not see McKinney again.

16. A few months later, he was seen by Defendant Dr. John Doe Wrightsville. This defendant stated Kennedy had HepC. When Kennedy told him what McKinney said this defendant stated that he did not know about it but that he'd let McKinney deal with it.

17. In or around 2013, Kennedy was seen by Defendant Dr. Michelle Bishop. Bishop told Kennedy that he did not have HepB

for HepC.

18.   In or around September 2013, Kennedy was seen by Defendant Dr. Iko who said Kennedy did not have HepB or HepC and he was removed from the Chronic Care list.

19.   Since around December 2011, Kennedy has experienced aches and pains in his right abdomen just under his rib cage. This is where the liver is located.

20.   At times, the pain has been excruciating. There have been nights where Kennedy could do nothing except ball up in bed because the pain is so bad. Over the past several months, these episodes of severe pain have increased in frequency and even when its not hurting really bad, it aches almost constantly.

21.   In addition, Kennedy has experienced fluctuating unexplained weight loss. In the last half of 2013, he went from around 130 lbs to around 165 lbs for no apparent reason. In the first week of January 2014, he lost 8 lbs. Oftimes after eating, he is nauseated and rarely has an appetite.

22.   These are symptoms of cancer, which HepC causes. The elevated enzyme levels, lasting 3-4 years, are evidence the disease is and has been progressing. He met the conditions and criteria to qualify as needing treatment over 1½ years ago but never recieved any.

23.   Since around Summer '13, Kennedy has complained to the medical department several times. When seen at "sick call", he was referred to see Defendants Bishop, Iko and Defendant Dr. Olsen.

24.   Dr. Olsen said it was probably just heartburn and prescribed generic zantac. When Kennedy returned several weeks later, he told

her the symptoms were worse. She only increased the dosage of zantac

25.     On Jan 29 2014, Kennedy was seen by Iko. In this encounter, Iko looked at a lab report from June 2013 and concluded that Kennedy did have HepB

26.     The actions of Dr. McKinney constituted a denial of treatment in violation of the 8th Amendment to the U.S Constitution

27.     The actions of Dr. John Doe - Wrightsville constituted a denial of access to medical personnel qualified to exercise judgment about a particular medical problem in violation of the 8th Amendment to the U.S Constitution

28.     The actions of Drs. Bishop, Olsen and Iko constituted a failure to inquire into essential facts that are necessary to make a professional judgment

29.     The actions of Drs. McKinney, Bishop, Olsen, Iko and John Doe - Wrightsville constituted medical treatment that was so grossly incompetent and inadequate as to shock the conscience and to be intolerable to fundemental fairness

30.     In the obvious need for treatment, the actions of Drs. McKinney, Bishop, Olsen, Iko and John Doe - Wrightsville was so cursory that it amounted to no treatment at all.

31.     The actions of the defendants described in the above 2 paragraphs constituted deliberate indifference in violation of the 8th amendment to the U.S. Constitution

32.     Corizon has procedures and criteria to determine when an inmate requires HepC treatment. Kennedy qualified for treatment in 2012 Drs McKinney, Bishop, Iko, Olsen and John Doe - Wrightsville

each had personal knowledge of Kennedys need for treatment and each failed to follow professional standards or even prison medical care protocols in providing or ensuring Kennedy received the needed treatment. These professional standards and protocols are evidence of each defendants knowledge of the risks posed by Kennedys symptoms and condition

33   In addition to the intentional acts, the actions of the defendants are repeated examples of negligent acts that disclose a pattern of conduct that adds up to deliberate indifference

34   The actions of the defendants described in the last 2 paragraphs constituted deliberate indifference in violation of the 8th amendment to the U.S. Constitution

35   In addition to the violations of federal constitutional law, the actions of the defendants constituted a state tort of medical negligence and malpractice

36   Each defendant doctor failed to have and use the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing

37   The duty of care owed to Kennedy was the same as that owed to a private patient. Drs. McKinney, John Doe-Wrightsville, Bishop, Olsen and Iko did not come close to providing the necessary level of care

38   The negligent actions of these defendants was a direct cause of the pain and suffering Kennedy has experienced.

39   In addition to his Federal Deliberate Indifference claim, Kennedy brings this state law tort claim under the supplemental jurisdiction of this Court

40.    In addition to the actual pain and suffering that the actions of these defendants have caused Kennedy to suffer, Kennedy also states a claim for mental pain and emotional anguish which was caused by the described acts

41.    Hepatitis is a life threatening disease that causes cancer. Simply having Hepatitis is terrifying. Then these doctors say he doesnt have it and Kennedy felt like he'd gotten a reprieve. Then they say he doesnt have it, then he does, then he doesnt and now they're saying he's had HepB all along

42.    He feels pain from his diseased liver. Even though he knows his lab tests showed he needs treatment, he's been faced with the fact that he likely wont be treated.

43.    Kennedy cannot adequately describe the frustration anguish and hopelessness he feels because he knows he'll likely face a unnecessary, agonizing death due to the defendants acts and the obvious fact that they just do not care

## DENTAL

44.    In or around November 2011, while housed at the Pine Bluff Diagnostics Unit, Kennedy had a filling come out of one of his back teeth, leaving a large hole in the tooth which was coated with decay

45.    Kennedy submitted a sick call request and was seen a few days later by Defendant Dr. Robert Jones. Dr. Jones stated that he would clean out the decay and attempt to save the tooth by re-filling the hole. Dr. Jones stated that the decay was extensive and that if he penetrated the pulp during the cleaning process that he might have to remove the tooth.

46    Kennedy asked Dr Jones if he pulled the tooth would he see Kennedy received "partials". Dr. Jones said he'd see

47    Dr. Jones told Kennedy to leave the infirmary and stated that Kennedy would be called back to perform the needed treatment

48    Kennedy did not ever see Jones again.

49    By January the tooth decay had progressed causing an abscess. Kennedys gums and jaw were swollen and extremely painful. It was painful for him to eat and often the infection caused him to throw up what he ate

50    Kennedy put in requests to the infirmary. He was told that Dr. Jones had transferred to the Ouchita River Unit and that the Diagnostics unit did not have a dentist.

51    During this time Kennedy had no access to any type of pain medications.

52    In mid-January 2012 Kennedy was transferred to the Grimes Unit. As soon as he arrived he filed an emergency grievance and submitted another sick call request. When Kennedy was seen by a sick call nurse. she confirmed the abscess and referred Kennedy to the Grimes Dentist. When Kennedy seen Defendant Dr. John Doe-Grimes   Doe-Grimes that the tooth had to be pulled

53    Like Jones, Doe-Grimes told Kennedy to leave the infirmary and said that he'd call Kennedy back to perform the extraction. He did not

54    Several days later Kennedy was transferred to the Wrightsville Unit When he arrived a Wrightsville he put in another sick call request He seen Defendant John Doe-Wrightsville (Dentist) who stated he would have to

8.

pull the tooth, but instead of pulling it then, he said he'd schedule an extraction. It took a couple of weeks for him to call Kennedy back to pull the tooth.

55.    When the tooth was extracted, it left Kennedy with (1) tooth on his upper jaw on each side. Kennedy asked John Doe-Wrightsville to (Dentist) get him some partials. Doe-Wrightsville (Dentist) Refused, saying Kennedy did not qualify as having a need for them.

56.    In May 2013, while going thru intake at the Ouchita River Unit, Kennedy was examined by DR. JONES. WHEN HE ENCOUNTERED DR. JONES AGAIN, HE ASKED HIM ABOUT THE PARTIALS JONES HAD SAID HE'D GET HIM. JONES BLEW HIM OFF STATING TO ASK THE DENTIST AT WHATEVER UNIT HE WENT TO.

57.    IN JUNE 2013, KENNEDY WAS SEEN BY DEFENDANT JOHN DOE-CALICO ROCK. HE ASKED DOE-CALICO ROCK TO GET HIM SOME PARTIALS. DOE-CALICO ROCK SAID HE'D PUT HIM ON THE LIST. AND THAT HE WOULD FILL SOME CAVITIES KENNEDY HAD.

58.    IN AUGUST 2013, KENNEDY WAS TRANSFERRED TO THE VARNER UNIT.

59.    IN OR AROUND DECEMBER 2013, KENNEDY PUT IN A GRIEVANCE ABOUT HIS NOT RECEIVING PARTIALS. HIS GRIEVANCE WAS RESPONDED TO BY DEFENDANT DEBORAH YORK, WHO CLAIMED DOE-CALICO ROCK DID NOT ORDER KENNEDYS PARTIALS BUT THAT HE "DISCUSSED" KENNEDYS CAVITIES.

60.    THE ACTIONS OF DR. JONES DESCRIBED IN PARAGRAPHS CONSTITUTED A DELIBERATE INDIFFERENCE TO A SERIOUS DENTAL NEED. KENNEDY WENT TO DR. JONES WITH HALF OF HIS TOOTH MISSING.

KENNEDY COMPLAINED OF PAIN. JONES IS A DENTIST. HE KNEW OF THE PAIN KENNEDY WAS IN. HE KNEW LACK OF IMMEDIATE TREATMENT WOULD LEAD TO FURTHER DETERIORATION, AND THAT LACK OF TREATMENT WOULD LEAD TO INFECTION AND ADDITIONAL UNNECESSARY SUFFERING

61    THE ACTIONS OF DEFENDANTS JONES, DOE-GRIMES AND DOE-WRIGHTSVILLE (DENTIST) CONSTITUTED A DELIBERATE INDIFFERENCE TO KENNEDYS SERIOUS DENTAL NEED. THESE DEFENDANTS DID NOT PROVIDE REASONABLE, AND REASONABLY PROMPT, ATTENTION FOR WHAT THEY KNEW TO BE AN AGONIZING DENTAL CONDITION.

62    JONES DID NOT PRESCRIBE ANY PAIN MEDS. BY THE TIME KENNEDY SEEN DOE-GRIMES AND DOE-WRIGHTSVILLE, (DENTIST) THE INFECTION WAS SO BAD THAT THE IBUPROFEN THEY GAVE HIM WAS WORTHLESS.

63    THE FAILURE OF DEFENDANTS JONES, DOE-GRIMES AND DOE-WRIGHTSVILLE (DENTIST) IN PROVIDING REASONABLY PROMPT DENTAL CARE WAS A DIRECT CAUSE OF KENNEDY EXPERIENCING EXCESSIVE AND PROLONGED UNNECESSARY PAIN AND SUFFERING, IN VIOLATION OF HIS RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

64    SINCE THE TOOTH WAS PULLED, KENNEDY HAS (1) BACK TOOTH ON EITHER SIDE UPPER JAW TO EAT WITH. IT IS IMPOSSIBLE TO PROPERLY CHEW FOOD WITH (1) TOOTH. ANYTIME KENNEDY EATS ANYTHING MORE SOLID THAN THE CONSISTENCY OF MASHED POTATOES, THE FOOD THAT HIS TOOTH MISSES GRINDS AND CUTS INTO HIS GUMS. HIS GUMS ARE SWOLLEN AND PAINFUL. FOOD OFTEN CUTS INTO HIS GUMS, CAUSING THEM TO BLEED AND BECOME INFECTED.

65    BOTH OF THE SINGLE TEETH ON EITHER SIDE UPPER JAW HAVE BECOME LOOSE. KENNEDY CAN WIGGLE THEM AROUND. THIS IS CAUSED

BY THE ADDITIONAL STRESS AND PRESSURE PLACED ON EACH OF THE
TEETH BY BEING FORCED TO PERFORM THE JOB OF MULTIPLE TEETH

66          KENNEDY HAS MADE DEFENDANTS JONES, DOE-GRIMES,
DOE-WRIGHTSVILLE, DOE-CALICO ROCK, AND YORK (DENTIST) PERSONALLY AWARE
OF HIS PAIN AND THE NEED FOR PARTIALS.

67          THESE DEFENDANTS HAVE BEEN AND REMAIN INDIFFERENT
TO KENNEDY'S SERIOUS DENTAL NEEDS AND THE IMMINENT THREAT
OF FUTURE PAIN AND INJURY THEIR INDIFFERENCE WILL CAUSE

68          THE ACTIONS OF THESE DEFENDANTS CONSTITUTED MEDICAL
TREATMENT THAT WAS SO GROSSLY INCOMPETENT AND INADEQUATE
AS TO SHOCK THE CONSCIENCE AND TO BE INTOLERABLE TO
FUNDEMENTAL FAIRNESS

69          IN THE OBVIOUS NEED FOR TREATMENT, THE ACTIONS OF THESE
DEFENDANTS WAS SO CURSORY THAT IT AMOUNTED TO ALMOST NO
TREATMENT AT ALL

70          THE ACTIONS OF THESE DEFENDANTS CONSTITUTED DELIBERATE
INDIFFERENCE IN VIOLATION OF THE 8TH AMENDMENT TO THE U.S.
CONSTITUTION

71          CORIZON HAS DENTAL TREATMENT PROTOCOLS THAT EACH DEFENDANT
FAILED TO FOLLOW. EACH DEFENDANT HAD PERSONAL KNOWLEDGE OF KENNEDYS
NEED FOR TREATMENT AND EACH FAILED TO FOLLOW PROFESSIONAL STANDARDS
IN PROVIDING OR ENSURING KENNEDY RECEIVED THE NEEDED TREATMENT
THESE PROFESSIONAL STANDARDS AND PROTOCOLS ARE EVIDENT OF EACH
DEFENDANTS KNOWLEDGE OF THE RISKS POSED BY KENNEDYS CONDITION.

72          The actions of these defendants are repeated examples of negligence
that disclose a pattern of conduct that adds up to deliberate indifference

73.     The actions of these defendants also constitute a state law tort claim for medical mal practice and negligence

74.     These defendants failed to have and use the knowledge, skill and care ordinarilly possessed and employed by members of the profession in good standing

75.     The duty of care owed to Kennedy was the same as that owed to a private patient. These defendants did not come close to providing that level of care

76.     The negligent acts of these defendants were a direct cause of the pain and suffering Kennedy has and continues to experience.

77.     Kennedy brings this state law tort claim under the supplemental jurisdiction of the Court

78.     DURING THE TIMES RELEVANT, Dr. JONES WAS THE ONLY DENTIST AT THE PINE BLUFF DIAGNOSTICS UNIT. JONES WAS RESPONSIBLE FOR PROVIDING DENTAL CARE TO DIAGNOSTICS UNIT INMATES.

## SHOULDER

79.     Kennedy broke his right ~~bonecoes~~ arm just below the shoulder in 2009. It did not heal properly

80.     Kennedy entered the prison system in or around December 2009. During an intake medical evaluation, it was determined by medical staff that

81.     Kennedy's shoulder was a condition where he could not perform several job duties without risk of injury

82.     Kennedy was classified "M-2" with several restrictions on the type of duties he could safely perform including no overhead work, restricting lifting to 10 lbs, etc.

83.     In or around August 2010, Kennedy requested his medical

restrictions be removed. His arm hadnt hurt in awhile. He thought he was healed and he was trying to get into work release.

84.  Shortly after, his shoulder dislocated. Over the next several months, Kennedy was given multiple x-rays, an M.R.I. and seen a "free world" orthopedist in Sherwood.

85.  It was determined that Kennedys shoulder would never work right without corrective surgery. Evidently Corizon did not feel surgery was necessary. Until Kennedy was released on 11-16-12, He was consistently given medical "scripts" limiting him to No or ONE-arm duty.

86.  Kennedy came back to PRISON IN MAY 2013. During the Intake Medical Evaluation, Kennedy specifically detailed his shoulder history to Defendant Intake Nurse.

87.  In spite of being made aware of it, Intake Nurse intentionally and deliberately ignored the extensively documented history of problems with kennedys shoulder. Intake Nurse medical classified Kennedy as "M-1" with no restrictions or limitations. M-1 inmates Are in excellent physical condition with no problems and can safely perform any duty.

88.  Kennedy finished intake and was sent to the North Central Unit. Because he was M-1, Prison staff assigned him to work on the Construction squad.

89.  kennedy's job was installing Heat and Air systems in the barracks they were building. He had to wrestle 8' pieces of galvanized steel duct and piece them together and bolt them into the ceiling. He also had to help wrestle industrial Air handlers into place that weighed tons.

90.  The work duties Kennedy was forced to perform caused him to repeatedly

hurt his shoulder.

91.    Kennedy was at N.C.U. Approx 2 months. During this time, he put in several requests. He was seen at "sick call" multiple times. The sick call Nurses didn't have the authority to remove Kennedy from Construction. They'd give him "No duty" scripts for a few days at a time and Referred him to see "the Provider". This is someone higher than a Nurse but lower than a doctor.

92.    The Provider referred Kennedy to see Defendant Bishop. Bishop claimed she could not Remove Kennedy from Construction. She gave Kennedy a No Duty Script FOR 3 DAYS and Referred him to see the Ortho doctor. Defendant Dr. Shock.

93.    Bishop is a CORIZON DOCTOR. She had the authority to issue any order necessary to PRESERVE an inmates good health. If she believed a problem was serious enough to justify a Referral to a specialist then she should have ordered Kennedy removed from a job duty that jeopardized his safety at least until he seen the ortho doctor.

94.    In July 2013, Kennedy was scheduled to see Dr. Shock. Kennedy did not see shock because he "did not have time" and Kennedy was told he'd be rescheduled.

95.    In August 2013, Kennedy was transferred to the Varner Unit. Kennedy was assigned to Vo-Tech school Mon-Thurs and on other days, he was assigned to Maintenance. This is a job for M-1 inmates.

96.    Around October 2013, Kennedy was seen by Dr. Shock. Kennedy patiently and explicitly explained his history to shock. Shock did not examine Kennedy. Shock did not order any x-rays or tests. He listened to Kennedy then said his shoulder was okay.

97.    ~~From the time~~ During the time he has been at Varner, Kennedy has been to sick call and Referred to Defendants Drs. Iwo and Olsen

14

several times.

98    Despite several complaints of EXTREME PAIN, RESULTING from his WORK duties, Olsen and Iko, as of Jan. 2014, have done nothing to REMOVE Kennedy from his unsafe WORK dutys.

99    From June 2013 up to Now, Kennedy's Job duties have caused him repeatedly injure his shoulder. Kennedy has consistently been IN PAIN for the past 10 months due to this.

100    Despite many complaints, the Defendants have largely ignored Kennedys pleas. At most, they have given him Ibuprofen which does not even WORK anymore.

101    The actions of these defendants constituted deliberate Indifference in violation of U.S. Const. Amend. VIII

102    When Kennedy was released in Nov. 2012, he was M-2 with extensive restrictions. He returned to PRISON a mere 5 months later. He detailed his shoulder history to Intake Nurse

103    Intake Nurse either did not view Kennedys medical records or deliberately ignored them

104    Bishop knew that Kennedys Job duties injured him. She had access to his medical records. She deliberately ignored them and left Kennedy on a Job duty where he would inevitably continue to re-injure himself

105    Shock was told about Kennedys problems. He knew Kennedy was seen by another doctor, who felt Kennedys shoulder was bad enough to Justify the attention of a specialist. Shock did not even examine Kennedy and left him on a Job duty where he would inevitably continue to reinjure himself.

15

106    Iko and Olsen seen Kennedy several times. Neither took any action to remove Kennedy from unsafe job duties.

107    THESE DEFENDANTS HAVE BEEN AND CONTINUE TO BE DELIBERATELY INDIFFERENT to KENNEDY/ SERIOUS MEDICAL NEEDS AND THE IMMINENT THREAT OF FUTURE INJURY AND PAIN THEIR INDIFFERENCE WILL CAUSE

108    THE ACTIONS OF THESE DEFENDANTS CONSTITUTED MEDICAL TREATMENT THAT WAS SO GROSSLY INCOMPETENT AND UNADEQUATE AS TO SHOCK THE CONSCIENCE AND TO BE INTOLERABLE TO FUNDEMENTAL FAIRNESS

109    IN THE OBVIOUS NEED FOR TREATMENT, THE ACTIONS OF THESE DEFENDANTS WAS SO CURSORY THAT IT AMOUNTED TO ALMOST NO TREATMENT AT ALL

110    THE ACTIONS OF INTAKE NURSE AND SHOCK CONSTITUTED A FAILURE TO INQUIRE INTO THE ESSENTIAL FACTS THAT WERE NECESSARY FOR THEM TO MAKE AN INFORMED JUDGMENT. THEY FAILED TO CONDUCT AN ADEQUATE EXAMINATION. THEY FAILED TO CONDUCT TESTS (I.E. X-RAY) THAT KENNEDYS CONDITION CALLED FOR

111    THE CARE KENNEDY RECEIVED FROM THESE DEFENDANTS, INCLUDING BISHOP, IKO AND OLSEN WAS NOT AT A LEVEL REASONABLY COMMENSURATE WITH MODERN MEDICAL SCIENCE AND OF A QUALITY ACCEPTABLE WITHIN PRUDENT PROFESSIONAL STANDARDS.

112    THE ACTIONS OF THESE DEFENDANTS CAUSED KENNEDY TO BE FORCED TO PERFORM DUTYS HE COULD NOT SAFELY PERFORM. THIS PERFORMANCE LED TO SEVERAL INJURIES WITH ASSOCIATIVE PAIN, KENNEDY COMPLAINED REPEATEDLY. THESE DEFENDANTS IGNORED KENNEDYS PLEAS AND

PAST HISTORY. THIS HAS LED TO MORE INJURIES AND MORE PAIN.

113    THE ACTIONS OF THESE DEFENDANTS SUBJECTED KENNEDY TO
TO UNNECESSARY AND WANTON INFLICTION OF PAIN IN VIOLATION OF
U.S. CONSTI AMEND. VIII

114    THE ACTIONS OF THESE DEFENDANTS ALSO CONSTITUTE A STATE LAW TORT CLAIM
FOR MEDICAL MALPRACTICE AND NEGLIGENCE

115    THESE DEFENDANTS FAILED TO HAVE AND USE THE KNOWLEDGE, SKILL AND CARE
ORDINARILLY POSSESSED AND EMPLOYED BY MEMBERS OF THE PROFESSION IN GOOD STANDING

116    THE DUTY OF CARE OWED TO KENNEDY WAS THE SAME AS THAT OWED TO A PRIVATE
PATIENT. THESE DEFENDANTS DID NOT COME CLOSE TO PROVIDING THAT LEVEL OF CARE

117    THE NEGLIGENT ACTS OF THESE DEFENDANTS WERE A DIRECT CAUSE OF THE PAIN
AND SUFFERING KENNEDY HAS AND CONTINUES TO EXPERIENCE

118    KENNEDY BRINGS THIS STATE LAW TORT CLAIM UNDER THE SUPPLEMENTAL
JURISDICTION OF THE COURT

ASSAULT / BROKEN NOSE

119    IN SEPTEMBER 2011, KENNEDY WAS ATTACKED BY OTHER INMATES
AT THE RANDALL L. WILLIAMS UNIT. DEFENDANT NELSON WAS ASSIGNED
TO SUPERVISE INMATES IN #2 BARRACKS, WHERE KENNEDY LIVED.
NELSON LEFT HIS POST. HE WAS NOT SUPERVISING #2 BARRACKS. WHILE
HE WAS GONE, 5 INMATES ATTACKED KENNEDY IN HIS SLEEP.

120    KENNEDY NOSE WAS BROKEN IN THE ATTACK. WHEN KENNEDY
GOT TO THE INFIRMARY, HE WAS SEEN BY DEFENDANT COLLINS.
COLLINS COULD NOT STOP THE BLEEDING. SHE TOLD KENNEDY TO LEAVE
THE INFIRMARY STATING THAT HE'D SEE A DOCTOR LATER

121      AN HOUR OR SO LATER, KENNEDY WAS TRANSFERRED TO THE NEARBY DIAGNOSTICS UNIT ("D.G.U."). WHEN KENNEDY LEFT THE INFIRMARY, HE WAS BLEEDING. WHEN DEFENDANT CORRECTIONAL OFFICER TRANSPORTED KENNEDY TO D.G.U., HE WAS STILL BLEEDING

122      CORRECTIONAL OFFICER DID NOT TRY TO GET KENNEDY SEEN BY ANY MEDICAL STAFF.

123      ONCE AT D.G.U, KENNEDY WAS NOT SEEN BY MEDICAL STAFF. OVER THE NEXT COUPLE OF WEEKS, KENNEDY WROTE A GRIEVANCE, WHICH WAS ANSWERED BY DEFENDANTS AMY WEST AND HEALTH SERVICES ADMINISTRATOR. NEITHER CAUSED KENNEDY TO RECEIVE MEDICAL CARE

124      KENNEDY DID NOT SEE ANYONE UNTIL AN ENTIRE MONTH AFTER THE ATTACK. BY THEN KENNEDYS NOSE HAS SET AND HEALED IMPROPERLY.

125      THE INJURY HAS LEFT KENNEDY DISFIGURED. HE CANNOT BREATHE OUT OF HIS NOSE, THIS CAUSES A SLEEP APNEA. AT TIMES, HE'S FOUND HIMSELF GAGGING AND SMOTHERING IN HIS SLEEP. THE PRESSURE IN HIS DAMAGED SINUSES CAUSES FREQUENT MIGRAINE LIKE HEADACHES. HE'S ASKED TO HAVE HIS NOSE SET PROPERLY. HE WAS TOLD CORIZON DOES NOT PERFORM THIS PROCEDURE

126      FOR AN ASSAULT WITH A HEAD INJURY, KENNEDY RECEIVED CARE SO CURSORY THAT IT AMOUNTED TO NO TREATMENT AT ALL.

127      COLLINS KNEW KENNEDY HAD A SERIOUS MEDICAL NEED AND ORDERED HIM TO LEAVE THE INFIRMARY WHILE HE WAS STILL BLEEDING.

128      COLLINS DID NOT DEAL WITH KENNEDYS MEDICAL NEEDS. COLLINS SAID SHE'D CAUSE KENNEDY TO SEE A DOCTOR BUT SHE DID NOT, COLLINS

ACTIONS CONSTITUTED A DENIAL OF ACCESS TO MEDICAL PERSONNEL QUALIFIED TO EXERCISE JUDGMENT OR PROVIDE ADEQUATE TREATMENT TO KENNEDY

129    COLLINS ACTIONS RESULTED IN SUBSTANTIAL HARM TO KENNEDY IN THE FORM OF PHYSICAL DISFIGUREMENT, CONTINUING PROBLEMS IN KENNEDYS ABILITY TO BREATHE AND UNNECESSARILY PROLONGED PAIN AND SUFFERING.

130    WHEN DEFENDANT CORRECTIONAL OFFICER TRANSPORTED KENNEDY TO D.C.W., HE SEEN KENNEDY WAS STILL BLEEDING. HE KNEW OR SHOULD HAVE KNOWN THAT BY FAILING TO EVEN STABILIZE KENNEDYS BLEEDING, THAT KENNEDY DID NOT RECEIVE ADEQUATE MEDICAL SERVICES. THIS DEFENDANT FAILED TO EVEN MAKE AN ATTEMPT TO REMEDY THE OBVIOUS UNLAWFUL CONDITION

131    DEFENDANTS WEST AND HEALTH SERVICES ADMINISTRATOR WERE IN POSITIONS OF AUTHORITY OVER THE DIAGNOSTICS UNIT MEDICAL DEPARTMENT. BOTH DEFENDANTS BECAME PERSONALLY KNOWLEDGABLE ABOUT KENNEDY NOT RECEIVING MEDICAL CARE WHEN THEY RECEIVED KENNEDYS GRIEVANCE.

132    BOTH DEFENDANTS ANSWERED THE GRIEVANCE IN WRITING, MAKING EXCUSES ABOUT WHY KENNEDY DID NOT SEE A DOCTOR. DOCTORS (OR PROVIDERS) ARE ON DUTY IN THE INFIRMARY EVERY WEEKDAY. BOTH DEFENDANTS COULD HAVE HAD KENNEDY SEEN IMMEDIATELY. THEY DID NOT. THEY DELIBERATELY FAILED TO REMEDY WHAT THEY KNEW TO BE AN UNLAWFUL CONDITION.

133    BOTH DEFENDANTS ACTIONS MIRRORED THE ACTIONS OF COLLINS DESCRIBED IN PARAGRAPHS 128-129.

134    THE ACTIONS OF THESE DEFENDANTS CONSTITUTED A DELIBERATE INDIFFERENCE TO KENNEDYS SERIOUS MEDICAL NEEDS WHICH CAUSED KENNEDY UNNECESSARILY PROLONGED UNNECESSARY PAIN AND SUFFERING IN VIOLATION OF

19

U.S. CONST. AMEND. VIII

135      THE ACTIONS OF DEFENDANTS COLLINS WEST AND HEALTH SERVICES ADMINISTRATOR
CONSTITUTED A STATE LAW TORT CLAIM FOR MEDICAL MALPRACTICE AND NEGLIGENCE

136      THESE DEFENDANTS FAILED TO HAVE AND USE THE KNOWLEDGE, SKILL AND CARE
ORDINARILY POSSESSED AND EMPLOYED BY MEMBERS OF THE PROFESSION IN GOOD STANDING

137      THE DUTY OF CARE OWED TO KENNEDY WAS THE SAME AS THAT OWED TO A PRIVATE
PATIENT. THESE DEFENDANTS DID NOT COME CLOSE TO PROVIDING THAT LEVEL OF CARE

138      THE NEGLIGENT ACTS OF THESE DEFENDANTS WERE A DIRECT CAUSE OF THE PAIN
AND SUFFERING KENNEDY HAS AND CONTINUES TO EXPERIENCE

139      THE ACTS OF NELSON CONSTITUTED A STATE LAW TORT CLAIM OF NEGLIGENCE
NELSON HAD A STATUTORY DUTY TO WATCH INMATES UNDER HIS SUPERVISION. HE
DID NOT AND THIS LED TO PLAINTIFFS INJURY

140      KENNEDY BRINGS THIS STATE LAW TORT CLAIM UNDER THE SUPPLEMENTAL
JURISDICTION OF THE COURT

SUPERVISORY NEGLECT

141      DEFENDANT KELLEY IS THE A.D.C. DEPUTY DIRECTOR OVER INMATE HEALTH
CARE SERVICES.

142      KELLEY HAS BEEN MADE PERSONALLY AWARE OF EACH OF KENNEDYS CLAIMS
SHE HAS DONE NOTHING TO REMEDY THE UNLAWFUL CONDITIONS OR TAKE
ACTION TO ENSURE THEY DO NOT CONTINUE.

143      KELLEYS ACTIONS ALSO CONSTITUTE A STATE LAW TORT CLAIM FOR NEGLIGENCE
AND A FAILURE TO FOLLOW A.D.C. ADMINISTRATIVE REGULATIONS

144      THE A.D.C. HAS PROMULGATED ADMINISTRATIVE REGULATIONS CONCERNING
INMATE HEALTH CARE SERVICES. THESE REGULATIONS ESTABLISH THAT IT IS THE

POLICY OF THE A.D.C. TO PROVIDE INMATES WITH ADEQUATE HEALTH CARE SERVICES.

145    THE A.D.C. HAS FARMED THIS DUTY OUT TO CORIZON, A CONTRACT CORRECTIONAL HEALTH CARE PROVIDER

146    THE A.D.C. SEEMS TO THINK BY HIRING CORIZON, IT HAS DONE ITS DUTY THE A.D.C. SEEMS TO THINK THAT WHEN CORIZON STAFF PROVIDE INADEQUATE MEDICAL SERVICES, THAT IT'S ON CORIZON STAFF AND THE A.D.C. HAS NO LIABILITY

147    THE A.D.C. ADMINISTRATIVE REGULATIONS PLACE A RESPONSIBILITY ON THE A.D.C. TO PROVIDE ADEQUATE HEALTH CARE SERVICES. THE RESPONSIBILITY IS ON THE A.D.C., NOT CORIZON. IF THE A.D.C. CONTRACTS HEALTH SERVICES OUT TO CORIZON THATS FINE

148    IF AN INMATE RECEIVES INADEQUATE MEDICAL CARE THEN THE A.D.C. HAS FAILED TO PROVIDE ADEQUATE HEALTH CARE SERVICES. IT HAS VIOLATED IT'S ADMINISTRATIVE REGULATIONS AND IT IS LIABLE

149    THE ACTIONS OF THE DEFENDANTS IN EACH CLAIM STATES A CLAIM THAT KENNEDY IS UNDER IMMINENT DANGER OF SERIOUS PHYSICAL INJURY A LACK OF TREATMENT FOR HEPC CAN LEAD TO CANCER AND DEATH. THE DENTAL CLAIM AND NEED FOR PARTIALS HAS LED TO GUM PAIN BLEEDING AND INFECTION IS IS LIKELY TO LEAD TO FURTHUR LOSS OF TEETH. THE INADEQUATE TREATMENT OF THE BROKEN NOSE CAUSES PROBLEMS BREATHING AND REPEATED HEADACHES WHILE HIS ARMS CONDITION UNSAFE DUTYS AND UNLAWFUL MEDICAL CLASSIFICATION WILL LIKELY CAUSE HIM TO CONTINUE INJURING HIS ARM UNTIL HE CAN NO LONGER USE IT, AND RISKS PERMANENT DISABILITY

Relief Requested

WHEREFORE Kennedy Requests the Court grant the following relief

A. Issue a declaratory Judgment stating that:

1. The actions of Defendants McKinney Collins Correctional Officer Jones Amy West Intake Nurse John Doe-Grimes John Doe-Calico Rock John Doe-Wrightsville (Dentist) John Doe-Wrightsville Bishop Olsen Iko Shock Health Services Provider York and Kelley in failing to provide adequate medical care for Kennedy violated and continue to violate Kennedy's rights under the Eighth Amendment to the U.S. Constitution.

2. The ACTIONS OF THE Above listed defendants in failing to provide adequate medical care for Kennedy constituted medical negligence and malpractice under Arkansas State law.

3. The ACTIONS OF Nelson in failing to properly supervise inmates he was assigned to supervise constituted negligence under Arkansas State law

4. THAT THE Administrative Regulations of the A.D.C place a statutory duty on the A.D.C to provide Adequate Health care services to inmates and that when an inmate receives inadequate medical care the A.D.C has failed to perform that statutory duty and is legally liable under negligence tort laws of Arkansas

B. Issue an Injunction ordering the Defendants or their agents to:

1. Immediately arrange the necessary tests necessary to determine if Kennedy has HepB or HepC and determine the condition of his liver and determine if he has liver cancer or cirrhosis

2. Immediately arrange for Kennedy to Receive upper dental partials and any other necessary dental care

20.

3. Immediately arrange for Kennedy to receive corrective surgery to fix his nose where he can breathe properly

4. Immediately re-classify Kennedys medical class commensurate with the condition of his shoulder and arrange for the surgery necessary to fix Kennedys Shoulder

C. Award Compensatory damages in the following amounts

1. $10,000°° for each of the (4) stated claims for the physical and emotional injury resulting from the defendants violating kennedys civil rights in not providing adequate medical care

2. $5000°° from Nelson for the state law tort claim of negligence

3. An amount to be determined by the jury against the defendants for medical malpractice.

D. Award Punitive Damages in the following amounts:

$5000°° each against each defendant

E. Grant other such relief as it may appear that plaintiff is entitled

January 31 2014                    Respectfully submitted

                                   Jeremy Kennedy # 93061
                                   P.O. Box 600
                                   Grady AR 71644

21.